IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>**Richard J. Williams and Mary Ann Cloud-Williams,**<br><br>Debtors. | Chapter 13<br><br>Case No. 13-12234 (BLS)<br><br>Related to Docket Nos. 19 & 20 |

Peter K. Schaeffer, Jr., Esq.
Avenue Law
1073 South Governors Avenue
Dover, DE 19904

*Counsel to the Debtors*

Michelle Berkeley-Ayres, Esq.
Atlantic Law Group, LLC
913 North Market Street
Wilmington, DE 19801

*Counsel to Ocwen Loan Servicing, LLC*

# OPINION[1]

The dispute between these Debtors and their mortgage servicing company spans eight years, two bankruptcies, tens of thousands of dollars in payments, and a considerable amount of litigation. While resolution of this matter requires intensive review of the lengthy payment history, the basic narrative is relatively simple: the Debtors fell behind on their mortgage and other debts in 2006 on account of illness and job loss. They filed for Chapter 13 relief in 2006 (the "2006 Case") [Case No. 06-10560]. In the course of that case, they paid off the prepetition arrearage in full under their plan; as is often the case, though, the Debtors fell behind or made irregular "current" payments on their mortgage over the years of the 2006 Case.

At the conclusion of the 2006 Case, the Debtors acknowledged that they were not current on their mortgage: the record reflects that

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law, as required by the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 7052, 9014(c).

they believed they might owe some fees or charges, as well as perhaps a single month's payment. Rather than fix that number with precision, the Debtors simply acknowledged in writing that their mortgage would not be "deemed current" at the end of the 2006 Case.

The ensuing mess is dispiritingly predictable. Shortly after emerging from the 2006 Case, the Debtors were informed in 2012 by the new mortgage servicer that they were substantially in default on their mortgage, and that foreclosure proceedings would be initiated. It was the mortgage servicer's position that the Debtors were approximately 16 months in arrears; in fact, as set forth in detail below, despite their erratic payments, the Debtors were not materially behind in payments at all.

Asserting a massive delinquency and refusing to accept tender of twelve separate, successive monthly payments from the Debtors, the mortgage company pressed forward with foreclosure. The Debtors commenced this case (the "2013 Case") [Case No. 13-12234] on August 30, 2013 to prevent the loss of their home. Ocwen Loan Servicing, LLC ("Ocwen") promptly filed a claim for prepetition arrearages in the amount of $43,388.42, reflecting a total of 28 alleged missed monthly payments (inclusive of the twelve payments that had been returned by Ocwen). The entire purpose of this bankruptcy case has been to determine Ocwen's prepetition arrearage claim, and it is Ocwen's burden to demonstrate entitlement to the amount it claims. As set forth below, Ocwen's claim will be allowed in the amount of $16,164.24, representing 12 payments of $1,347.02. These correspond with the 12 payments that were tendered by the Debtors and returned prepetition by Ocwen. Fees and costs shall be awarded to the Debtors.

## I. BACKGROUND

The Debtors filed their first Chapter 13 petition on June 8, 2006. They completed their Chapter 13 plan, including paying off the arrearage on their mortgage with Countrywide Home Loans ("Countrywide"). Countrywide submitted a proof of claim reflecting a secured claim of $146,746.61 with a prepetition arrearage of $15,590.98. The

Chapter 13 trustee's ledger and the Bank of America payment history[2] show that the entire arrearage was paid over the course of the plan. The Debtors received their discharge on December 12, 2011, though as noted above, the Debtors stipulated that they were not current on their post-petition mortgage obligations, and the case was closed on January 13, 2012.

In May 2012, Ocwen began servicing the mortgage. On an ongoing basis, Ocwen has failed to provide normal monthly statements to the Debtors, necessitating that the Debtors call Ocwen each month to ascertain the amount due.[3] After accepting two of the Debtor's early payments for July and September 2012, Ocwen asserted that the mortgage was in material default, began returning the Debtors' payments, and commenced foreclosure proceedings on the Debtors' home. In order to save their home, the Debtors filed the 2013 Case on August 30, 2013. Ocwen filed a proof of claim [Claim No. 3] reflecting a secured claim of $152,944.69 with a prepetition arrearage of $43,388.42.

The Debtors filed an objection to Ocwen's proof of claim [Docket No. 19], and Ocwen filed a response to the Debtors' objection [Docket No. 20]. A trial was held on May 15, 2014. The Court heard testimony from two witnesses: Sony Prudent, a loan analyst for Ocwen, and Mrs. Cloud-Williams. The Court admitted into evidence a copy of Ocwen's proof of claim with attachments[4]; the payment histories for the account (the Bank of America payment history reflecting account activity from March 1995–June 2012[5] and the Ocwen payment history reflecting account activity from May 2012–November 2013[6]); the Chapter 13 trustee's ledger for plan payments made under the Debtors' 2006 Case[7]; and voluminous canceled checks submitted by the Debtors.[8]

---

[2] Bank of America acquired Countrywide in 2008.
[3] Hr'g Tr. at 112--13.
[4] Debtors' Ex. 2.
[5] Ocwen's Ex. 1.
[6] Ocwen's Ex.3.
[7] Ocwen's Ex. 2.
[8] Debtors' Ex. 3.

## II. THE PARTIES' POSITIONS

### A. The Debtors' Position

The Debtors argue that the amount of the prepetition arrearage listed on the proof of claim is inaccurate. They contend that the arrearage should consist of no more than 12 missing payments, which payments were tendered to Ocwen by the Debtors and returned by Ocwen due to the pendency of the foreclosure proceedings. The Debtors believe that until Ocwen started returning payments, they were up to date on their mortgage payments. According to the analysis of Debtors' counsel, the confusion arises because post-petition payments made by the Debtors in their 2006 Case were applied toward the prepetition arrearage, which the Chapter 13 Trustee was already paying in full.

### B. Ocwen's Position

Ocwen argues that the Debtors owe 28 missing payments as set forth in Ocwen's proof of claim. Ocwen concedes that the Debtors were current as of January 2009 but contends that the Debtors began to fall behind at that point, missing a total of 16 payments between February 2009 and August 2012 when Ocwen began returning payments. In combination with the 12 payments that Ocwen returned, that forms the basis for the 28 missing payments.

## III. JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

## IV. LEGAL ANALYSIS

### A. Legal Standard

Under Bankruptcy Rule 3001, a "proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). The initial burden is on the objector "to produce evidence suf-

ficient to negate the prima facie validity of the filed claim." *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *Id.* at 174 (citing *In re WHET, Inc.*, 33 B.R. 424, 437 (Bankr. D. Mass. 1983)).

In this case, the Court finds that the Debtors have provided sufficient evidence to negate the prima facie validity of Ocwen's claim. The burden then shifts to Ocwen to prove the validity of the claim by a preponderance of the evidence. There is no dispute that Ocwen returned 12 payments to the Debtors between August 2012 and August 2013, and that an arrearage exists for those 12 payments.[9] The burden is on Ocwen to show that there exists a further arrearage for the additional 16 allegedly missing monthly payments.

### B. Ocwen's Analysis of the Accounting

During the trial, Ocwen's counsel walked through the Bank of America payment history with Mr. Prudent. Ocwen concedes that the Debtors were post-petition current in their 2006 Case as of January 2009, and Ocwen's counsel stated, "It is our contention that after January 2009 that's when they fell behind again post-petition."[10] Ocwen's counsel asked Mr. Prudent about amounts labeled as "Regular Payment[s]" in the Bank of America payment history and elicited testimony from the witness that no regular monthly payment was processed for February, April, June, August, October, November, and December 2009; February, April, May, July, August, October, and November 2010; and March and June 2011. These add up to a total of 16 missed regular monthly payments.

However, this simple tally obscures the complexities of the payment history. The Debtors made several monthly payments outside the repayment schedule. In 2008, while making all of their regular

---

[9] The record reflects, and the Court commends, that the Debtors have scrupulously held these 12 payments in a separate account to avoid their expenditure for other purpose. Hr'g Tr. at 129.
[10] Hr'g Tr. at 20:15-16.

monthly payments, the Debtors also made three extra monthly payments (on 2/22/2008, 5/20/2008, and 8/28/2008). In 2009, they made a double monthly payment in July and three additional monthly payments on top of their regular monthly payment in September. In 2011, they made two extra monthly payments (on 9/26/2011 and 10/20/2011), and in 2012, they made one extra monthly payment (on 2/13/2012).

Additionally, in May 2010, they sent what looks like a typical monthly payment but it was labeled as a "Misc. Posting" instead of "Regular Payment" in the payment history. Mr. Prudent testified that an amount listed in the payment history as a miscellaneous posting was cash coming in if the number listed in the payment amount is not in parentheses.[11] Various other amounts sent in by the Debtors were also marked as miscellaneous postings over the years. Therefore, the tally of 16 missed regular monthly does not give the complete picture.

Finally, though Mr. Prudent was an articulate witness, he was unable to testify to the nature of a variety of matters, such as how payments were processed or why certain payments were applied certain ways. While Ocwen services the loan today, Mr. Prudent was unable to explain with precision certain aspects of the payment history prior to the time Ocwen took over servicing the loan in 2012, which considerably detracted from Ocwen's ability to support its case.[12]

### C. The Debtors' Analysis of the Accounting

The Debtors' analysis is based on the defectiveness of the Bank of America accounting in failing to distinguish between prepetition and post-petition payments during the pendency of the 2006 Case. Instead of applying the Debtors' post-petition payments to their post-petition obligation and the trustee's payments to the prepetition arrearage, whenever a payment came in from either the Debtors or the trustee, it apparently was applied to the oldest month outstanding. Thus, the Debtors' early post-petition payments were applied to the prepetition

---

[11] Hr'g Tr. at 39:24--40:5, 68:22--69:5, 79:21--80:19.
[12] *E.g.*, Hr'g Tr. at 65:21-22, 66:7, 66:21-22, 67:13-15, 80:8, 81:4-5.

arrearage. Debtors' counsel argues that the arrearage from the 2006 Case was therefore paid twice, because the trustee's payments were also going toward the arrearage.

However, the Court concludes that the failure to properly apply post-petition payments to the post-petition obligation and trustee payments to the prepetition obligation nets out in the end. With both Debtor and trustee payments initially being applied to the arrearage, at some point the oldest outstanding month was June 2006, which is the month the petition was filed in the 2006 Case, and thereafter both Debtor and trustee payments were applied to the post-petition period. This occurred in January 2007: the trustee payment made on January 31, 2007, was applied to the June 2006 payment period. All subsequent trustee payments were applied to the post-petition period. Therefore, there was no double-counting of the arrearage.

### D. The Court's Analysis of the Accounting

Given the shortcomings of the two proffered analyses, the Court uses a third approach. The analysis starts with the attachment to Ocwen's proof of claim, which states that the arrearage primarily consists of 28 payments of $1,347.02. Ocwen concedes, and the Court agrees through its independent review of the evidence, that the Debtors were post-petition current in their 2006 Case as of January 2009. Therefore, from February 2009 through August 2013, the Debtors would have owed 55 payments of $1,347.02, equaling $74,086.10. During that period, counting both regular payments and miscellaneous postings[13] to the account, the Debtors made payments totaling $58,380.44. The following chart details the payments considered, combining data from the Bank of America payment history and the Ocwen payment history:

| Transaction Date | Payment Amount | Transaction Description |
|---|---|---|
| 3/24/2009 | $1,685.47 | Regular Payment |
| 5/13/2009 | $1,616.99 | Regular Payment |
| 7/2/2009 | $2,694.04 | Regular Payment |

---

[13] As noted above, Mr. Prudent testified that miscellaneous postings not in parentheses were cash coming into the account. Hr'g Tr. at 39:24--40:5, 68:22--69:5, 79:21--80:19.

| Date | Amount | Type |
|---|---|---|
| 9/30/2009 | $1,685.47 | Regular Payment |
| 9/30/2009 | $1,685.47 | Regular Payment |
| 9/30/2009 | $1,685.47 | Regular Payment |
| 9/30/2009 | $1,685.47 | Regular Payment |
| 1/21/2010 | $1,685.47 | Regular Payment |
| 3/3/2010 | $1,685.47 | Regular Payment |
| 5/28/2010 | $1,685.47 | Misc. Posting |
| 6/9/2010 | $1,685.47 | Regular Payment |
| 9/27/2010 | $1,685.47 | Regular Payment |
| 9/27/2010 | $12.82 | Misc. Posting |
| 12/7/2010 | $1,685.47 | Regular Payment |
| 12/7/2010 | $12.82 | Misc. Posting |
| 1/19/2011 | $1,698.29 | Regular Payment |
| 2/11/2011 | $1,698.29 | Regular Payment |
| 4/25/2011 | $1,698.29 | Regular Payment |
| 5/10/2011 | $1,698.29 | Regular Payment |
| 7/6/2011 | $1,698.29 | Regular Payment |
| 8/3/2011 | $1,685.47 | Regular Payment |
| 9/7/2011 | $1,618.65 | Misc. Posting |
| 9/26/2011 | $1,618.65 | Misc. Posting |
| 10/20/2011 | $1,685.47 | Regular Payment |
| 10/20/2011 | $1,685.47 | Regular Payment |
| 11/4/2011 | $1,698.29 | Regular Payment |
| 12/7/2011 | $1,698.29 | Regular Payment |
| 1/18/2012 | $1,698.29 | Regular Payment |
| 1/23/2012 | $1,618.65 | Misc. Posting |
| 1/23/2012 | $79.64 | Misc. Posting |
| 1/23/2012 | ($1,698.29) | Payment Reversal |
| 2/2/2012 | $1,685.47 | Regular Payment |
| 2/13/2012 | $1,698.29 | Regular Payment |
| 3/12/2012 | $1,698.29 | Regular Payment |
| 3/21/2012 | $88.53 | Misc. Posting |
| 4/11/2012 | $1,698.29 | Regular Payment |
| 5/8/2012 | $1,698.29 | Regular Payment |
| 6/15/2012 | $1,685.47 | Regular Payment |
| 7/11/2012 | $1,685.47 | Payment |
| 9/24/2012 | $1,685.47 | Payment |
| | Total: $58,380.44 | |

The difference between the amount that was owed during that period and the amount paid to the account is approximately 12 payments of $1,347.02. Therefore, the Court will allow the arrearage in the amount of 12 monthly payments, or $16,164.24. Ocwen has failed to carry its burden to show that any monthly payments beyond that amount or any additional fees and charges are properly due.

Additionally, the Court notes that Ocwen's unfounded and incorrect assertion of a material default and its pursuit of foreclosure are the cause of these Debtors needing to file this second bankruptcy. The Court will award the Debtors their attorneys' fees and costs.

## V. CONCLUSION

For the foregoing reasons, the Court will enter an order sustaining the Debtors' objection to Ocwen's proof of claim; allowing Ocwen's claim for a prepetition arrearage in the limited amount of $16,164.24; and awarding attorneys' fees and costs. An appropriate Order follows.

BY THE COURT:

Dated: July 18, 2014
Wilmington, Delaware

Brendan Linehan Shannon
United States Bankruptcy Judge